IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 16-0018-WS |
| | ) | |
| PEDRO PICASSO GARCIA and | ) | |
| JACQUELINE BUSTAMANTE, | ) | PUBLISH |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on the defendants' motions to suppress.  (Docs. 54, 57).  The government has filed a response, (Doc. 60), and the defendants a reply.  (Docs. 63, 66).

On December 15, 2015, defendant Garcia was driving a vehicle east on Interstate 10; defendant Bustamante was his passenger.  The defendants were pulled over by Lieutenant Cayton for changing lanes without signaling, and a search of the stopped vehicle uncovered suspected narcotics.  The defendants are charged with drug offenses, and Garcia is also charged with an immigration offense.

The defendants raise the following challenges:  (1) the traffic stop was illegal; (2) the detention was illegally extended; (3) the defendants were seized/arrested without probable cause; and (4) the search was conducted without a warrant or valid consent.[1] The first of these challenges implicates a purely legal threshold issue, which the Court resolves herein.  Resolution of the remainder of the first challenge, and resolution of the other challenges, depends upon a determination of facts, for which an evidentiary hearing is required.

As the defendants concede, (Doc. 55 at 3), "[a]s a general matter, the decision to stop an automobile is reasonable [under the Fourth Amendment] where the police have

---

[1] In her reply brief, Bustamante extends her challenge to the search of her purse.  (Doc. 63 at 7).

probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).  "An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment …." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11ᵗʰ Cir. 2003).  However, "a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop." *Id.* at 1279.  The defendants argue it is not illegal under Alabama law to change lanes without signaling, such that Lt. Cayton made a mistake of law that cannot justify the initial detention.

"A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Ala. Code § 32-5A-88(1).  The defendants correctly note that nothing in this provision requires the use of a signal when changing lanes, (Doc. 55 at 4), but they have cited the wrong provision.  As the government points out, (Doc. 60 at 5), the provision at issue is Section 32-5A-133.

"No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." Ala. Code § 32-5A-133(a).  The defendants do not deny that "moving right or left upon a roadway" includes changing lanes, and it clearly does so.² They argue, however, that Section 32-5A-133(a) does not require a signal if "such movement can be made with reasonable safety" without one. (Doc. 63 at 3, 5).

For this proposition, the defendants first rely on *United States v. One 1993 Ford F150 Pickup*, 148 F. Supp. 2d 1258 (M.D. Ala. 2001).  Judge Thompson, without discussion, described Section 32-5A-133(a) as "requir[ing] a motorist to use his turn signal whenever moving his vehicle left or right 'unless and until such movement can be

---

² Indeed, the defendants insist that the phrase encompasses "even the most miniscule migration of a vehicle in either direction." (Doc. 63 at 2).

made with reasonable safety.'" *Id*. at 1262.[3]  He then ruled that the arresting officer had probable cause to stop the defendant when he merged into a turn-only lane without giving an appropriate signal. *Id*. at 1262-63.  The arresting officer "also could conclude reasonably that the lane change could not be made with reasonable safety absent the use of a turn signal." *Id*. at 1263.  The defendants glean from *1993 Ford* "the implication … that if the lane change could occur with reasonable safety, a turn signal would not be required."  (Doc. 63 at 5).[4]

As a matter of policy, the defendants' position may be defensible; there may or may not be a good reason to require motorists to signal a lane change when, for example, no one else is there to see it.[5]  The Court, however, has not been commissioned to develop Alabama policy; its function is only to construe Section 32-5A-133(a) as it is written.  And the Court can discern no principled way to construe the clear language of that provision as requiring a signal only when a lane change cannot safely be negotiated without one.

Section 32-5A-133(a) identifies two restrictions on turning or changing lanes. First, the movement must be capable of being made with reasonable safety.  Second, the driver must give an appropriate signal.  The two restrictions are introduced by "[n]o person shall" and connected with "nor."  The word "nor" means "[a]nd not; or not; not either."[6]  It therefore denotes a second, additional negative.  Section 32-5A-133(a) thus signifies that a driver shall not change lanes when it is unsafe *and* shall not change lanes

---

[3] Several years later, Judge Thompson reached a different conclusion in *United States v. Dorsey*, 2003 WL 23306149 (M.D. Ala. 2003). *See infra* note 15.

[4] It is not clear that the defendants seriously advance this argument, since they elsewhere acknowledge that Section 32-5A-133(a) "states that once a driver is confident reasonable safety exists to either turn or move right or left upon a roadway, he must give an appropriate signal." (Doc. 63 at 1-2).  Since the argument is asserted, however, the Court addresses it.

[5] On the other hand, it might not be prudent policy to encourage motorists not to use turn signals whenever they decide one is unnecessary.

[6] American Heritage Dictionary of the English Language 1201 (5th ed. 2011); Webster's New College Dictionary 763 (3rd ed. 2008).

without a signal.  Nothing in the statutory language supports the idea that the two provisions are alternative restrictions rather than cumulative restrictions.  Indeed, if they were alternative restrictions, as the defendants propose, it would be equally permissible for a driver to change lanes when it is manifestly unsafe, so long as he uses a signal.  The text of Section 32-5A-133(a) does not support such a nonsensical reading.

The Alabama Legislature did not create Section 32-5A-133 from whole cloth.  Rather, that section – and much of the 1980 Alabama Rules of the Road Act[7] generally – was derived from the Uniform Vehicle Code ("UVC").  *See, e.g., Swann v. City of Huntsville*, 455 So. 2d 944, 948 (Ala. Crim. App. 1984) (Section 32-5A-194(a)(4) was derived from the UVC).[8]  Section 32-5A-133(a) is itself a verbatim repetition of Section 11-604 of the UVC as it existed in 1979.  Traffic Laws Annotated 1979 at 197 ("TLA 1979").[9]  Prior to 1962, Section 11-604 provided that "[n]o person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided *in the event any other traffic may be affected by such movement*."  *Id*. (emphasis added).[10]  A 1962 amendment deleted the italicized language, and "[t]he purpose of this amendment was to require a turn signal even though a turning movement may not apparently affect other traffic."  *Id*.  A 1971 amendment produced the language adopted by the Alabama Legislature in 1980, and after that amendment "[t]he important rule that remains is that drivers should *always* give a signal before turning or before moving right or left upon a

---

[7] Ala. Code §§ 32-5A-1 *et seq*.

[8] *See also* Ala. Code §§ 32-5A-7 to -11, -30, -36, -54, -56 to -59, -89, -113, -115, -136, -151, -154, -155, -178, -215, -243 commentary (noting derivation from UVC).

[9] TLA 1979 was produced by the National Committee on Uniform Traffic Laws and Ordinances ("the Committee") and is available online at Google Books.

[10] Prior to the 1980 revisions, Alabama law used identical language.  *Cox v. Miller*, 361 So. 2d 1044, 1047 (Ala. 1978).

roadway." *Id*. (emphasis added).[11]  Because Section 32-5A-133(a) is a verbatim adoption of Section 11-604, it inescapably is subject to the same, textually obvious construction.

Unable to support their construction within the four corners of Section 32-5A-133(a), the defendants turn to subsection (b), which provides that "[a] signal of intention to turn right or left *when required* shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."  Ala. Code § 32-5A-133(b) (emphasis added).  The defendants rely on *Bowers v. State*, 473 S.E.2d 201 (Ga. App. 1996), which, in interpreting Georgia's similar (but not identical) statute, concluded that the quoted phrase would be superfluous if a signal were always required.  *Id*. at 203.  The *Bowers* Court avoided this superfluity by construing the statute to require a signal only if the lane change cannot be accomplished with reasonable safety.  *Id*.[12]

The *Bowers* Court, like the defendants, failed to address the UVC from which the lane-changing statute was derived.  Section 11-604(b) has included the phrase, "when required," since 1944.  TLA 1979 at 198.  The phrase was added when Section 11-604(a) still required a signal only when "other traffic may be affected by such movement," and it was never deleted by the Committee after the 1962 deletion of the qualifying language from Section 11-604(a).  Because, in the post-1962 world, Section 11-604(a) always requires a signal when changing lanes, the "when required" language of Section 11-604(b) and Section 32-5A-133(b) is indeed a superfluous artifact of that earlier period.[13] But precisely because the clear intent of Section 11-604(a) and Section 32-5A-133(a) is

---

[11] Consistent with the defendants' concession, TLA 1979 confirms that "moving right or left upon a roadway" includes "when a driver changes lanes." *Id*. at 198.

[12] "As [a] decisio[n] not concurred in by all panel members, *Bowers* … do[es] not constitute binding precedent." *Morgan v. State*, 710 S.E.2d 922, 925 (Ga. App. 2011). However, because the Eleventh Circuit has assumed that *Bowers* reflects Georgia law, *see Hudson v. Hall*, 231 F.3d 1289, 1296 n.6 (11th Cir. 2000), the Court does so as well.

[13] While "there is a presumption … that no superfluous words … were used" in a legislative enactment, *State Superintendent of Education v. Alabama Education Association*, 144 So. 3d 265, 273 (Ala. 2013) (internal quotes omitted), the discussion in text rebuts that presumption.

to "always" require a signal, it would be improper to nullify that clear intent for the mere sake of avoiding a nominal superfluity.  It is, after all, "th[e] Court's responsibility in a case involving statutory construction to give effect to the legislature's intent in enacting a statute when that intent in manifested in the wording of the statute …." *City of Prichard v. Baizer*, 95 So. 3d 1, 3 (Ala. 2012) (internal quotes omitted).  Following *Bowers* as the defendants suggest would violate that duty.[14]

The defendants complain that the cases cited by the government do not actually state that a signal is required even when it is safe to change lanes without one.  (Doc. 63 at 3-4).  Given the clarity of the result, the absence of such authority would not be significant but, in any event, several federal cases have in fact reached the same conclusion as the Court, albeit with less analysis.[15]

Finally, the defendants argue that Section 32-5A-133, even if it requires a signal with each lane change, does not provide drivers with constitutionally sufficient notice as to what sort of signal is adequate and is thus unconstitutionally vague.  The asserted vagueness arises because, while subsection (a) states that the "appropriate signal" will be described "hereinafter," subsection (b) addresses only the appropriate signal when turning, not when changing lanes, leaving motorists to guess at how much signal is needed.  (Doc. 63 at 1-3).

_____

[14] Even were the Court to adopt the *Bowers* approach, under Georgia law a turn signal is always required when another vehicle is in the vicinity.  *United States v. Frazier*, 2008 WL 5245876 at *3 (S.D. Ga. 2008); *accord United States v. Woods*, 385 Fed. Appx. 914, 916 (11th Cir. 2010).  The defendants have not suggested that no vehicles were in the vicinity when Garcia changed lanes.

[15] *See Brown v. Endo Pharmaceuticals, Inc.*, 38 F. Supp. 3d 1312, 1325 n.13 (S.D. Ala. 2014) ("Alabama drivers are not permitted to change lanes without activating their turn signals …."); *United States v. Scott*, 2014 WL 948471 at *3 (N.D. Ala. 2014) ("Based on the court's finding that Scott activated his turn signal at the same time he began to move into the turn lane, the court finds Captain Amos had probable cause to stop Scott for failing to signal his move into the turn lane in accordance with Alabama law."); *United States v. Dorsey*, 2003 WL 23306149 at *3 (M.D. Ala. 2003) ("Rather than creating an exception to the turn signal requirement when a turn can be executed safely, the statute provides that a driver must both turn only when it is safe to do so and signal his turn before making it.").

Assuming without deciding that Section 32-5A-133 is impermissibly vague in this regard, the defendants do not explain how such vagueness could help them.  They do not assert that Garcia gave a signal that Lt. Cayton deemed inadequate, and the government represents without contradiction that Garcia gave no signal at all.  (Doc. 60 at 1).[16]  In the absence of *any* signal, Garcia unquestionably violated the statute's clear command to give *some* signal, and that clear violation provided Lt. Cayton probable cause for the stop, regardless of whether he could have lawfully stopped Garcia under different circumstances.

For the reasons set forth above, the Court rules that it is a violation of Alabama law to change lanes without a signal, even if the lane change can be safely accomplished without such a signal.  To the extent Lt. Cayton stopped the vehicle for changing lanes without a signal, he did not act under a mistake of law such as to eliminate probable cause justifying a traffic stop.

The defendants' motions to suppress are hereby set for an evidentiary hearing on **April 25, 2016** at **10:00 a.m.** in Courtroom 2-A.

DONE and ORDERED this 14th day of April, 2016.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[16] Without asserting that Garcia signaled his lane change, the defendants state that Lt. Cayton was parked alongside the interstate and so could not have observed whether Garcia signaled.  (Doc. 57 at 2, 3).  (According to the government, Lt. Cayton was not stopped but was driving behind Garcia's vehicle.  (Doc. 60 at 1).)   What Lt. Cayton did observe or could have observed cannot be determined prior to an evidentiary hearing, but in any event the defendants' assertion does not undermine the government's position that the stop was based on the failure to give any signal at all, not on the giving of an inadequate signal.